**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| ROCKWELL AUTOMATION TECHNOLOGIES, INC., | |
| *Plaintiff*, | Case No. 2:12-cv-10274-GCS-MKM |
| v. | Honorable George Caram Steeh |
| SECURE CROSSING RESEARCH AND DEVELOPMENT INC., | **[REDACTED]** |
| *Defendant*. | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO STAY PROCEEDINGS**

Plaintiff, Rockwell Automation Technologies, Inc. ("Rockwell" or "Plaintiff"), respectfully submits this memorandum of law in opposition to defendant Secure Crossing Research & Development Inc.'s ("Secure Crossing" or "Defendant") Motion to Stay Litigation Pending a Request for Reexamination of the Patent-In-Suit (the "Motion"). (Docket 31.) For the reasons set forth herein, Secure Crossing's Motion should be denied.

## QUESTIONS PRESENTED

1.      Whether the Court should exercise its discretion to stay this case where:  (1) Secure
        Crossing's request for reexamination of U.S. Patent No. 7,990,697 was dilatory, designed
        to delay judgment and made to insulate it from its discovery obligations; (2) Rockwell
        will be prejudiced by the stay; (3) the case will be ready for trial by the end of October
        2012; and (4) the reexamination will not likely reduce the burden of litigation?

Rockwell's Answer:  NO


2.      Whether staying this proceeding is premature because the Patent and Trademark Office
        has not yet granted the request for reexamination?

Rockwell's Answer:  YES


3.      Whether Secure Crossing should be required to post a bond against a judgment for
        infringement of the '967 Patent if a stay is issued?

Rockwell's Answer:  YES

i

# TABLE OF CONTENTS

**Page**

I. Introduction ........................................................................................................1

II. Factual Background...........................................................................................1

III. Argument .........................................................................................................4

      A.     The Court Has Discretion to Deny Secure Crossing's Motion to Stay..................4

      B.     Rockwell Will Suffer Undue Prejudice and Tactical Disadvantage if the Stay is Granted Now ...............................................................................................6

            1.     A Stay Would Reward Secure Crossing's Dilatory Motives......................6

            2.     Given that Rockwell Expects to Be Ready For Trial this Year, Delaying Resolution for Two to Three Years Would Be Prejudicial........................7

            3.     Issuing a Stay will Make It Difficult for Rockwell to Enjoin the Sale of the Accused Products ...................................................................................8

      C.     The Reexamination Will Not Simplify Issues for Trial.........................................9

            1.     Any Simplification Is Highly Speculative As Reexamination Has Not Even Been Granted .................................................................................9

            2.     The Tactical Motivation for Filing for Reexamination Cuts Against its Merit...................................................................................................10

            3.     Should the Reexamination Find the '967 Patent Valid the Court's Work Would Increase ...................................................................................10

      D.     The Stage of Litigation Does Not Favor a Stay...................................................13

      E.     If the Stay is Granted, Rockwell Requests Briefing Regarding a Suitable Bond ..13

IV. Conclusion ......................................................................................................14

ii

## TABLE OF AUTHORITIES

**Page(s)**

CASES

Am. Ceramicraft, Inc. v. Eisenbraun Reiss Inc.,
  No. 92-2851, 1993 WL 498863 (D.N.J. June 16, 1993)..........................................12

Anascape, Ltd. v. Microsoft Corp.,
  475 F. Supp. 2d 612 (E.D. Tex. 2007)...................................................................7

Applied Materials, Inc. v. Negevtech, Inc.,
  No. C 04-03656, 2005 WL 1656894 (N.D. Cal. July 14, 2005)............................10

Baxter Int'l, Inc. v. Fresenius Medical Care Holdings, Inc.,
  No. 08C 2389, 2008 WL 4395854 (N.D. Ill. Sept. 25, 2008)...................................9

Biax Corp. v. Fujitsu Computer Sys. Corp.,
  No. 2:06-cv-364, 2007 U.S. Dist. LEXIS 12973 (E.D. Tex. Feb. 26, 2007)..................7, 8, 13

Borgwarner, Inc. v. Honeywell Int'l, Inc.,
  No. 1:07cv184, 2008 WL 818934 (W.D. N.C. March 24, 2008) ...........................9

Centillion Data Systems, LLC. v. Convergys Corp.,
  No. 1:04-cv-0073-LJM-WTL, 2005 WL 2045786, (Aug. 24, 2005, S.D. Ind.)..............5, 6, 13

Cequent Trailer Prods., Inc. v. Diversi-Tech Corp.,
  No. 5:05-CV-74 NAM/GJD, 2008 WL 819750 (N.D.N.Y. March 25, 2008)...................8, 12

Copper Technologies v. Thomas & Betts Corp.,
  No. 2:06-CV-242, 2008 WL 906315 (E.D. Tex. March 31, 2008) ........................5, 7, 11, 12

Dusa Pharms, Inc. v. River's Edge Pharms., LLC,
  No. 06-1843 (SRC), 2006 WL 1320049 (D.N.J. May 15, 2006)...............................9

E.I. DuPont de Nemours & Co. v. Phillips Petroleum Co.,
  711 F. Supp. 1205 (D. Del. Mar. 6, 1989) ............................................................12

Esco Corp. v. Berkeley Forge & Tool, Inc.,
  No. 09-1635, 2009 WL 3078463 (N.D. Cal. Sept. 28, 2009)................................10

Gladish v. Tyco Toys, Inc.,
  No. S-92-1666, 1993 U.S. Dist. LEXIS 20211 (E.D. Cal. Sept 16, 1993)...............7

IMAX Corp. v. In-Three, Inc.,
  38F. Supp.2d 1030, 1033 (C.D. Cal. 2005) ............................................................8

Lexington Lasercomb I.P.A.G. v. GMR Products, Inc.,
    442 F. Supp.2d 1277 (S.D. Fla., 2006) ...................................................................8

Ohio Env'tl Council v. U.S. Dist. Ct., S.D. Ohio,
    565 F.2d 393 (6th Cir. 1977) ..........................................................................4, 5

Plasmart, Inc. v. Wincell Intern. Inc.,
    No. 10745, 2008 WL 4107464 (S.D.N.Y. Sept. 22008)......................................13

Robbins v. H.H. Brown Shoe Co., Inc.,
    No. 6885, 2009 WL 2170174 (S.D.N.Y. June 30, 2009).....................................11

Sighing Sys. Inst., LLC v. Prestige Law Enforcement, Inc.,
    2006 U.S. Dist. LEXIS 64698 (N.D. Tex. Sept. 11, 2006)..................................13

Tesco Corp. v. Weatherford Intern., Inc.,
    599 F. Supp.2d 848, 851 (S.D.Tex., 2009) .........................................................8

Texas MP3 Technologies, Ltd. v. Samsung Electronics Co., Ltd,
    No. 2:07-CV-52, 2007 WL 3219372 (E.D. Tex. Oct. 30, 2007) .........................5, 8

Tyco Healthcare, LP v. Medrad,
    No. 1:04-cv-773, 2005 U.S. Dist LEXIS 42869 (S.D. Ohio 2005) ........................5

United States v. Mandycz,
    321 F. Supp.2d 862 (E.D. Mich. 2004)..............................................................4. 5

Viskase Corp. v. Am. Nat'l Can Co.,
    261 F.3d 1316 (Fed. Cir. 2001).........................................................................5

STATUTES

28 U.S.C. § 471......................................................................................................8

35 U.S.C. § 303(a) ................................................................................................10

35 U.S.C. § 315(c) ................................................................................................11

# I.  INTRODUCTION

There are cases in which staying an infringement action pending the reexamination of a patent by U.S. Patent and Trademark Office's ("PTO") serves the interests of the Court and the parties.  This, however, is not one of those cases.  For the past seven months Secure Crossing has been on notice that its Zenwall products infringe upon U.S. Patent No. 7,990,697 (the "'967 Patent"), and it has been more than four months since this lawsuit was filed.  Yet, it was only twenty-one days ago that Secure Crossing requested a reexamination of Rockwell's patent, and only 15 days ago that it filed its motion for a stay.  The timing of Secure Crossing's request for reexamination is suspect.

From the start, Secure Crossing has tried to delay this action and has shown disregard for its discovery obligations.  This attitude is not surprising since the little information Rockwell has unearthed about Secure Crossing's business and products to date has been damaging.  Given the circumstances leading to this point, it takes no stretch to see the Motion for what it is:  a thinly-veiled tactic designed to shield Secure Crossing from judgment by thwarting disclosure of additional malevolent and potentially fraudulent conduct underlying Secure Crossing's creation and sale of its infringing Zenwall products, as well as its business dealings.

# II.  FACTUAL BACKGROUND

The background of the dispute between Rockwell and Secure Crossing sheds light on Secure Crossing's true motivation in bring this action.  In November 2008, Rockwell provided notice to Secure Crossing that the Zenwall products infringed on Rockwell's '967 Patent.  (See Nov. 9, 2008 Email from Randall Reeves to Scott Speroff, Declaration of Paul Tanck in Support

of Opposition to Motion ("Tanck Decl."), Exh. A).[1]  Rockwell filed a complaint for patent

infringement against Secure Crossing on January 20, 2012.  (Docket 1.)  Secure Crossing sought

to delay this action from the outset.  First, Secure Crossing sought an "indefinite extension of

time to respond to the Complaint."  (See Secure Crossing's Motion to Extend Time to Answer,

Docket 11 at ¶ 16.)  Although Rockwell agreed to a two week extension, Secure Crossing

petitioned the Court for more time, and got it.  (See Rockwell's Opposition to Secure Crossing's

Motion to Extend Time to Answer, Docket 12 at 2-3; see also March 12, 2012 Order, Docket

13.)

       On April 24, 2012, Rockwell served Secure Crossing with document and interrogatory

requests.  (Tanck Decl., ¶ 4.)  Secure Crossing's responses were due on May 28, 2012.  (Id.)  To

date, despite repeated inquiries, nothing has been produced in response to these discovery

requests.  (Id.)  Next, Secure Crossing disregarded the Court's Order to provide Rockwell with

Rule 26(a) Initial Disclosures on May 25, 2012.  (May 11, 2012 Case Management Order

("CMO"), Docket 22.)  The disclosures were provided on June 12, 2012, but only after prodding

by Rockwell.  (Tanck Decl., ¶ 5.)  In addition, Secure Crossing has failed to meaningfully

comply with a court-order requiring it produce "core technical" documents by June 1, 2012.

(Tanck Decl., ¶ 6.)  While Secure Crossing did provide a handful of documents, it did not

produce the design specifications and source code needed to understand the accused products.[2]

---

[1] The Court has already entertained a discussion regarding when Secure Crossing learned of its
possible infringement of the '967 Patent.  (See Rockwell's Response to Motion to Extend Time
to Answer Complaint, Docket 12.)

[2] The handful documents Secure Crossing produced consisted of:  an introductory summary of
Secure Crossing and its product, a white paper, an advertisement for the Zenwall product, a

(Cont'd on following page)

On May 30, 2012, Secure Crossing made an ex parte request for reexamination of the '967 Patent to the PTO. (<u>See</u> Motion at Exh. A.) On May 31, 2012, Rockwell took the court-ordered deposition of Mr. Reeves. (CMO, Docket 22.; Tanck Decl., ¶ 3.) On June 5, 2012, Secure Crossing sought to stay this action. (<u>See</u> Motion.)

At every turn, Secure Crossing has tried to delay the progress of this action and has disregarded at the weight of court-ordered disclosure obligations and properly-served discovery requests. Indeed, based on the limited discovery obtained by Rockwell to date, it appears that Secure Crossing is fearful that discovery in this action will scare away potential customers and sources of funding and investment capital. ██████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████ ▌ ██

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████

_____

(Cont'd from preceding page)

quick start guide and Zenwall user manual, and materials provided to the PTO as part of its request for reexamination of the '967 Patent. (Tanck Decl., ¶ 6.) Secure Crossing did not produce design and development specifications or source code detailing how the various features and functions of the accused products operate. (<u>Id</u>.)

[3] All references to the Deposition of Mr. Reeves are attached as Exhibit B to the Tanck Declaration.

████████████████████████████████████████ Given the false and

negative information that has come to light thus far, is easy to see how Secure Crossing would

want to prevent the further exploration of these topics and the unearthing of other misstatements.

Secure Crossing's refusal to participate in discovery supports the inference that it is fearful of

information coming to light that might expose it to further or different liability and harm its

ability do business.

  In contrast to Secure Crossing's efforts to drag its feet, Rockwell has diligently pursued

its claim for patent infringement.  It has sought discovery, and provided Secure Crossing with

disclosures and Preliminary Infringement Contentions.  (Tanck Decl., ¶¶ 4, 7.)  Rockwell

estimates that this case will be ready for trial by the end of October 2012.[4]

  In the meantime, Rockwell is in the process of developing a product embodying the

invention covered by the '967 Patent which relates to the filtering of industrial protocols.  Upon

release, the product is expected to compete with Secure Crossing's Zenwall product line.

(Declaration of Lee A. Lane filed in Support of Opposition ("Lane Decl."), ¶ 2.)

### III.  ARGUMENT

**A.**  **The Court Has Discretion to Deny Secure Crossing's Motion to Stay**

  The decision to stay litigation "ordinarily rests with the sound discretion of the district

court."  United States v. Mandycz, 321 F. Supp.2d 862, 864 (E.D. Mich. 2004) (quoting Ohio

Env'tl Council v. U.S. Dist. Ct., S.D. Ohio, 565 F.2d 393, 396 (6th Cir. 1977).  A party moving

---

[4] The May 11, 2012 Case Management Order (Docket 22) only sets dates through June 28, 2012.
At the hearing on June 21, 2012, Rockwell intends to present the Court with a schedule that
would permit this action to be ready for trial by the end of October 2012.

for a stay of litigation carries the burden of proof.  Mandycz, 321 F. Supp at 866.  The moving

party must "show that there is pressing need for the delay, and that neither the other party, nor

the public will suffer harm from the entry of the order."  Id. (quoting Ohio Evntl. Council, 565

F.2d at 396).  In general, when evaluating whether to issue a stay, courts consider:  (1) whether a

stay will unduly prejudice or tactically disadvantage the non-moving party; (2) whether a stay

will simplify the issues in question and streamline the trial; and (3) whether a stay will reduce the

burden of litigation on the parties and the Court.  See Centillion Data Systems, LLC. v.

Convergys Corp., No. 1:04-cv-0073-LJM-WTL, 2005 WL 2045786, *1 (Aug. 24, 2005, S.D.

Ind.)

     There is absolutely no obligation "to stay judicial resolution in view of [PTO]

reexaminations."  Viskase Corp. v. Am. Nat'l Can Co., 261 F.3d 1316, 1328 (Fed. Cir. 2001).

Instead, the Court should "tread carefully" in determining whether a stay is necessary, "since a

party has a right to a determination of its rights and liabilities without undue delay."  Tyco

Healthcare, LP v. Medrad, No. 1:04-cv-773, 2005 U.S. Dist LEXIS 42869, at *24 (S.D. Ohio

2005); Copper Technologies v. Thomas & Betts Corp., No. 2:06-CV-242, 2008 WL 906315, *1

(E.D. Tex. March 31, 2008) (exercising discretion denying stay despite PTO's reexamination of

patents and finding that management of the docket "requires the exercise of judgment, which

must weigh competing interests and maintain an even balance") (citing references omitted);

Texas MP3 Technologies, Ltd. v. Samsung Electronics Co., Ltd, No. 2:07-CV-52, 2007 WL

3219372, *1 (E.D. Tex. Oct. 30, 2007) (exercising discretion denying stay despite PTO's

reexamination of patents).  In Centillion Data Systems, LLC., a case relied upon by Secure

Crossing, the court denied the defendants' first request for a stay, since the request for

reexamination had yet to be granted by the PTO.  2005 WL 2045786 at *1.  After the

reexamination was granted by the PTO, the Court again denied defendants' renewed motion to stay.  Id.  The Centillion defendants argued exactly what Secure Crossing argues in this case, that the potential reexamination "puts the efficacy of this proceeding in jeopardy as the PTO may find the patent flawed" and that "[t]o continue this suit while the PTO makes its reexamination, Defendants argue, both the parties and the Court waste resources."  Compare id. at *1 with Motion at 5-8.  The court rejected these arguments.  Id.  The Centillion court concluded that while proceeding to trial without a decision on the reexamination from the PTO "may in fact waste resources," it held that this is "no reason to delay discovery."  Id.  Secure Crossing cannot meet the burden necessary to demonstrate that a stay is warranted in this case.

**B.     Rockwell Will Suffer Undue Prejudice and Tactical Disadvantage if the Stay is Granted Now**

**1.     A Stay Would Reward Secure Crossing's Dilatory Motives**

The curious timing of the request for reexamination – in the wake of pressure to comply with discovery demands – makes Secure Crossing's Motion suspect.  (See § II supra.)  Secure Crossing has been aware that its Zenwall products infringe on the '967 patents since November 2011, yet it has only sought reexamination recently, and after being ordered to comply with its discovery obligations.  (See § II supra.)

Indeed, the Court can consider Secure Crossing's motivation for seeking the stay.  See Centillion, 2005 WL 2045786 at *1 (finding the timing of the request for reexamination "indicated that this request for stay may be more of a dilatory tactic than one of necessity").  Just as in Centillion, the timing of Secure Crossing's reexamination request is suspect, since Secure Crossing had ample opportunity to file its request earlier, and in fact has threatened as much for many months prior, including at the Rule 16 Conference with the Court.  (Tanck Decl., ¶ 9.)  Secure Crossing's tactics to avoid discovery should not be rewarded.

The requested stay would also prejudice Rockwell's ability to fairly prosecute this case when the stay is finally lifted because discovery will be harder to obtain.  Biax Corp. v. Fujitsu Computer Sys. Corp., No. 2:06-cv-364, 2007 U.S. Dist. LEXIS 12973, at *4 (E.D. Tex. Feb. 26, 2007). "[C]rucial witnesses are more likely to be located if discovery is allowed to proceed now, rather than later." Anascape, Ltd. v. Microsoft Corp., 475 F. Supp. 2d 612, 617 (E.D. Tex. 2007).  Because "witnesses may become unavailable, their memories may fade, and evidence may be lost while the PTO proceedings take place," Rockwell would be at a disadvantage if the case is stayed.  Gladish v. Tyco Toys, Inc., No. S-92-1666, 1993 U.S. Dist. LEXIS 20211, *5-6 (E.D. Cal. Sept 16, 1993).

Secure Crossing's tactics to avoid discovery, and the increased difficulty of obtaining discovery over time, weigh in favor of denying the Motion.

### 2. Given that Rockwell Expects to Be Ready For Trial this Year, Delaying Resolution for Two to Three Years Would Be Prejudicial

The stay requested by Secure Crossing would likely delay Rockwell's right to have its claims heard in Court for approximately two to three years.[5]  Such a lengthy delay, on its face, can present a clear case of substantial prejudice.  See, e.g., Cooper Technologies,  2008 WL 906315 at *1-*2 (denying motion to stay and finding that "the potential delay for an indefinite

---

[5] The PTO has no definitive guideline on the length of time involved to complete a reexamination proceeding.  According to the PTO's filing data regarding ex parte reexaminations, the historical average pendency (filing date to certificate issue date) is 21.5 months.  (See Reexamination Filing Data from March 31, 2012, Motion at Exh. B.)  The process does not end there because the PTO's decision can be appealed to the Board of Patent Appeals and Interferences and again to the Federal Circuit (by the patentee, but not the requestor), which could add further delay to the proceedings.  Thus, staying this case could delay final disposition for years.

period would likely prejudice [the patentee]"); Texas MP3 Technologies, Ltd., 2007 WL

3219372 at *1 (finding that "potential delay could cause prejudice" and "weighs against a stay");

Lexington Lasercomb I.P.A.G. v. GMR Products, Inc., 442 F. Supp.2d 1277, 1278 (S.D. Fla.,

2006) (denying motion to stay pending the PTO's reexamination of a patent where the stay

"could result in an delay of months, if not years"); IMAX Corp. v. In-Three, Inc., 38 F. Supp.2d

1030, 1033 (C.D. Cal. 2005) (noting prejudice in a delay of potentially two years).  The Eastern

District of Texas, one of the busiest patent litigation jurisdictions in the United States, has found

that "the potential delay for an indefinite period" pending an ex parte reexamination "would

likely prejudice" the patentee plaintiff.  Biax Corp., 2007 U.S. Dist. LEXIS 12973, at *3.

Evidence in Biax reflected an average ex parte reexamination pendency of 22.6 months, with the

possibility of an additional 24 months for appellate review.  Id.  Rockwell is entitled to swift

resolution of this matter before this Court.  See 28 U.S.C. § 471; Cequent Trailer Prods., Inc. v.

Diversi-Tech Corp., No. 5:05-CV-74 NAM/GJD, 2008 WL 819750, *2 (N.D.N.Y. March 25,

2008).  Should a stay be imposed, Rockwell's right to have an expeditious determination of its

claims would be compromised.

**3.    Issuing a Stay will Make It Difficult for Rockwell to Enjoin the
        Sale of the Accused Products**

The '967 Patent relates to a new and burgeoning market for software that filters industrial

protocols.  Rockwell is currently developing a product that incorporates its patented technology.

(See Lane Decl., ¶ 2.)  Should a stay be issued, upon the release of this product, Rockwell will be

forced to compete against an infringing competitor.  (See id.)  As a matter of general

understanding, the first year of a product's release is critical in terms of cultivating a market.

Indeed, Rockwell will continue to "lose some market share and revenue the longer the suit

continues."  Tesco Corp. v. Weatherford Intern., Inc., 599 F. Supp.2d 848, 851 (S.D.Tex., 2009)

("Where the parties are direct competitors, a stay would likely prejudice the non-movant.") (citations omitted); Baxter Int'l, Inc. v. Fresenius Medical Care Holdings, Inc., No. 08C 2389, 2008 WL 4395854, *4 (N.D. Ill. Sept. 25, 2008) (internal citations omitted). This delay will cause irreparable damage to Rockwell that cannot be compensated by royalties obtained from Secure Crossing's sale of the infringing Zenwall products. Thus, Secure Crossing's focus on the fact that Rockwell has not sought to enjoin the sale of the accused products is a red herring. (Motion at 2.)

**C.    The Reexamination Will Not Simplify Issues for Trial**

Secure Crossing speculates that the reexamination will result in a finding that the '967 Patent is invalid, or a narrowing of its claims, and that statements made by the parties during the reexamination process will eventually inform the court during claims construction. (Motion at 5-7.) These arguments, however, are generic to all reexaminations. Secure Crossing's position assumes that a reexamination will always simplify the issues for the Court. If these speculative benefits were sufficient, courts would not consider whether a reexamination would simplify the issues for trial and would rubber stamp a request for stay upon the filing of a reexamination. This is not the case.

**1.    Any Simplification Is Highly Speculative As Reexamination Has Not Even Been Granted**

Secure Crossing's Motion is premature because reexamination has not yet been granted. See, e.g., Borgwarner, Inc. v. Honeywell Int'l, Inc., No. 1:07cv184, 2008 WL 818934, *1 (W.D. N.C. March 24, 2008) (denying without prejudice accused infringer's motion to stay case pending ex parte reexamination because the motion was premature as the PTO had not yet allowed reexamination); Dusa Pharms, Inc. v. River's Edge Pharms., LLC, No. 06-1843 (SRC), 2006 WL 1320049, *2., n.1 (D.N.J. May 15, 2006) (denying stay as premature when request for

reexamination had not yet been granted by the PTO); <u>Applied Materials, Inc</u>. v. <u>Negevtech, Inc</u>., No. C 04-03656, 2005 WL 1656894 at *2 (N.D. Cal. July 14, 2005) (same).  The PTO has up to three (3) months from the filing of a request to determine whether to allow a reexamination.  <u>See</u> 35 U.S.C. § 303(a).  Since Secure Crossing filed its request for reexamination of the '967 Patent on May 30, 2012, (Motion at 1, n.1), the PTO is not required to respond to Secure Crossing's request until July 30, 2012.  Of course, none one of the purported simplifications flowing from the reexamination that Secure Crossing argues can be realized if the PTO does not decide to entertain Secure Crossing's request.

Thus, at the very minimum, this Court should deny Secure Crossing's Motion as premature and revisit the issue should the request for reexamination of the '967 Patent be allowed.

**2.     The Tactical Motivation for Filing for Reexamination Cuts Against its Merit**

Even if the PTO were to allow the reexamination to take place, a cursory review of the arguments made in Secure Crossing's request to the PTO demonstrates that it is doomed from the start.  (<u>See</u> Motion at Exh. A.)  In its haste to file for reexamination, Secure Crossing largely relies upon a prior art reference, the Keane reference, that was already examined by the PTO when the '967 patent was issued.  (Tanck Decl., ¶ 8.)  The reexamination argues this prior art reference in combination with a handful of other references which are unrelated to technology at issue.  (<u>See</u> Motion at Exh. A.)  Accordingly, the reexamination request retraces old ground and will likely be rejected by the PTO in due course.

**3.     Should the Reexamination Find the '967 Patent Valid the Court's Work Would Increase**

Some courts have determined that in order to "truly simplify the issues . . . the outcome of the reexamination must finally resolve all issues in the litigation."  <u>Esco Corp</u>. v. <u>Berkeley</u>

10

Forge & Tool, Inc., No. 09-1635, 2009 WL 3078463, *3 (N.D. Cal. Sept. 28, 2009) (citations

omitted) (rejecting stay request even after claims in one of the two patents-in-suit were rejected

in first reexamination office action); Robbins v. H.H. Brown Shoe Co., Inc., No. 6885, 2009 WL

2170174, *2 (S.D.N.Y. June 30, 2009) (unless the reexamination will simplify all issues, the

factor weighs against granting a stay); Cooper Technologies, 2008 WL 906315, At *2 (finding

that since claims may either survive the reexamination or be materially changed, any implication

resulting from the reexamination is speculative.)

 Contrary to Secure Crossing's assertions, the requested stay will not simplify the issues at

trial.  While Secure Crossing admits that it would be estopped from challenging claims

determined to be valid and patentable by the PTO "on any ground that was raised or could have

been raised during the reexamination," it does not concede challenges to validity on other

grounds.  (See Motion at 7.)  By statute, Secure Crossing only would be barred from asserting

any prior art reference that it raised (or could have raised) in the reexamination.  See 35 U.S.C. §

315(c).  But the statute does not bar Secure Crossing from challenging the validity of the '967

Patent based on newly discovered prior art.  Id; see also Cooper Technologies, 2008 WL 906315,

At *2.  As the statutory bar will not apply to this newly discovered prior art, Secure Crossing will

get two bites at the apple.

 Secure Crossing is careful not suggest that it would relinquish any invalidity arguments

following reexamination.  Barring such a concession from Secure Crossing, it is disingenuous to

argue that the issues would be simplified at trial.  Secure Crossing undoubtedly will search for,

and use, new prior art once the requested stay is lifted.  In other words, the issues surrounding

invalidity could be essentially doubled because Secure Crossing would raise the same arguments

with new references.  The Court will still be required to construe the '967 Patent claims and determine validity and infringement.

During the lengthy reexamination process, the PTO will not address claim construction or Secure Crossing's infringement of the asserted claims.  Nor will it give any explicit guidance in this regard.  In short, the PTO's reexamination of the '967 Patent is not a substitute for the proceedings in this Court, and therefore a stay will not simplify the issues for trial.  Cequent Trailer Prods., 2008 WL 819750 at *2 (As "federal courts and the [PTO] 'take different approaches in determining invalidity and on the same evidence could quite correctly come to different conclusions" it is "not necessary for this court to wait for the results of a possible reexamination.").  In addition, there is no question, that waiting for the reexamination to conclude will complicate this action for the Court by adding another layer to the file history for the '967 Patent.  Thus, this factor weighs in favor of denying Secure Crossing's Motion.

Even if the Court were to believe that the issues would be simplified, when a stay of litigation "could result in a tactical advantage to one party or the other," a court should not stay the litigation "simply because the outcome of the PTO proceedings *may* moot the issues remanded."  E.I. DuPont de Nemours & Co. v. Phillips Petroleum Co., 711 F. Supp. 1205, 1208 n.9 (D. Del. Mar. 6, 1989) (emphasis in original); see also Am. Ceramicraft, Inc. v. Eisenbraun Reiss Inc., No. 92-2851, 1993 WL 498863, at *10 (D.N.J. June 16, 1993) ("[e]ven though the PTO reexamination may ultimately moot the claim of invalidity, the PTO has not yet done so" and the "reexamination is not likely to settle the controversy over the [patent] any time in the near future").  This Court should not stay the litigation based on Secure Crossing's speculation and conjecture that the claims might be narrowed or invalidated.

**D.      The Stage of Litigation Does Not Favor a Stay**

Secure Crossing argues that the stay should be grated because the litigation is not "advanced." (Motion at 8.) The factor is not dispositive, however. See Sighing Sys. Inst., LLC v. Prestige Law Enforcement, Inc., 3:05-CV-1560, 2006 U.S. Dist. LEXIS 64698, *11 (N.D. Tex. Sept. 11, 2006) ("Although the advanced nature of a case approaching trial may weigh heavily against granting a stay, the opposite inference - that a suit in the early stages should weigh heavily in favor of a stay - is not true."); see also Biax, 2007 U.S. Dist. LEXIS 12973 at *6 (same). Any other rule would encourage patent infringers so obviously intent on gaming the patent system to secure an indeterminately lengthy reprieve from accounting for their infringing activities simply by filing a quick request for reexamination with the PTO.

In addition, the fact that Secure Crossing has indicated its intent to seek sanctions under Federal Rule of Civil Procedure 11 weighs in favor of denying the Motion. The court in Centillion held that "Defendants' desire to [] challenge the allegations in the complaint via a motion pursuant to Federal Rule of Civil Procedure 11" also favors "not wait[ing] for a decision by the PTO on reexamination." 2005 WL 2045786, at *1. Just like the defendant in Centillion, Secure Crossing is "seeking sanctions pursuant to FRCP 11 for maintaining a frivolous lawsuit" as it explains in its Rule 26(a)(1) Initial Disclosures. (Tanck Decl., ¶ 5.)

**E.      If the Stay is Granted, Rockwell Requests Briefing Regarding a
          Suitable Bond**

When an accused infringer requests a stay pending a reexamination, courts can condition the grant of the stay upon the accused infringer posting a bond. This is particularly true where the accused infringer may not be able to pay the money judgment due to their infringement. See Plasmart, Inc. v. Wincell Intern. Inc., No. 10745, 2008 WL 4107464, at *1 (S.D.N.Y. Sept. 2, 2008) (conditioning a stay pending reexamination upon the posting of a bond against a judgment

for infringement damages).  Should the Court be inclined to grant the Motion, Rockwell requests

the opportunity to brief the issue of a suitable bond that would need to be posted by Secure

Crossing.

## IV.  CONCLUSION

For the foregoing reasons, the Court should deny Secure Crossing's Motion, and this

litigation should proceed.

Dated:  June 20, 2012

Respectfully submitted,

/s/      Scott S. Balber

HONIGMAN MILLER SCHWARTZ AND
COHN LLP
J. Michael Huget (P39150)
Deborah J. Swedlow (P67844)
130 S. First Street – 4th Floor
Ann Arbor, MI  48104-1386
Tel:    (734) 418.4268
Fax:    (734) 418.4269
Email:  mhuget@honigman.com
         bswedlow@honigman.com


CHADBOURNE & PARKE LLP
Scott S. Balber
Paul J. Tanck
Lisa Schapira
30 Rockefeller Plaza
New York, NY  10112
Tel.:   (212) 408-5100
Fax:    (212) 541-5369
Email:  sbalber@chadbourne.com
         ptanck@chadbourne.com
         lschapira@chadbourne.com

**ATTORNEYS  FOR PLAINTIFF ROCKWELL
AUTOMATION TECHNOLOGIES, INC.**

**CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of June, 2012 a copy of the foregoing was

electronically filed with the Clerk of the Court using the ECF system which will send

notification of such filing to the attorneys of record.


Dated:  June 20, 2012                         /s/        Lisa Schapira

                                              Lisa Schapira
                                              CHADBOURNE & PARKE LLP
                                              30 Rockefeller Plaza
                                              New York, NY  10112
                                              Tel.:  (212) 408-5100
                                              Fax:  (212) 541-5369
                                              Email:  lschapira@chadbourne.com

                                              ATTORNEY FOR PLAINTIFF
                                              ROCKWELL AUTOMATION TECHNOLOGIES, INC.