IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ROCKWELL AUTOMATION TECHNOLOGIES, INC., <br><br> *Plaintiff,* <br><br> v. <br><br> SECURE CROSSING RESEARCH AND DEVELOPMENT INC., <br><br> *Defendant.* | Case No.  2:12-cv-10274-GCS-MKM <br><br> Honorable George Caram Steeh <br><br> Referred to Honorable Mona K. Majzoub <br><br> [Oral Argument Requested] |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR A
SUPPLEMENTAL PROTECTIVE ORDER**

**I.    INTRODUCTION**

Based on an unfounded paranoia, Defendant Secure Crossing Research & Development Inc. ("Secure Crossing") seeks restrict access to evidence to outside experts only, and even seeks to exclude <u>outside</u> counsel for Plaintiff Rockwell Automation Technologies, Inc. ("Rockwell") from being able to view highly relevant evidence.  Secure Crossing's request is both drastic and unwarranted.

Secure Crossing's Zenwall products, which are products that relate to the filtering of industrial protocols, are alleged to infringe on United States Patent No. 7,990,967 (the "'967 Patent").  Secure Crossing is withholding design specifications, source code and other technical documents for its Zenwall products – evidence needed to prove infringement – until its Motion is resolved.  Rockwell's attorneys need to be able to review and analyze this evidence in order to develop Rockwell's claims against Secure Crossing and to prepare this case for trial.  Rockwell

1

understands the need for confidentiality regarding Secure Crossing's technical documents, but there is already a protective order in effect for this action that contains an "attorneys eyes only" designation. (See Stipulated Protective Order (the "Protective Order"), Docket No. 30.) Despite having negotiated and agreed to the terms of this protective order, Secure Crossing seeks an extreme modification of this agreement that would limit access to technical information about the Zenwall products only to non-lawyer experts, and have it be viewable only at the Court. This position is not reasonable, and as such Secure Crossing's Motion should be denied. In the interest of providing additional protection to Secure Crossing, however, Rockwell is willing to amend the terms of the Protective Order to provide for an "outside attorneys eyes only" confidentiality designation.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     Secure Crossing Has Consistently Sought To Delay Discovery

Secure Crossing's motion twists the factual posture of this case and makes unsupported attacks regarding Rockwell's Outside and In-House Counsel. Since the start of this action, Secure Crossing has sought to thwart discovery, and this Motion is just another delay tactic. On April 24, 2012, Rockwell served Secure Crossing with document and interrogatory requests. (Declaration of L. Schapira in Support of Response ("Schapira Decl."), ¶ 2.) Secure Crossing's responses to Rockwell's document and interrogatory requests were due on May 28, 2012, thirty days following service. (Id.) Secure Crossing did not timely respond to the discovery, and thus waived any and all objections.[1] (See id.) Rockwell then met and conferred with Secure

---

[1] "As a general rule, failure to object to discovery requests within the thirty days provided by Rules 33 and 34 constitutes a waiver of any objections." See MAS, Inc. v. Nocheck, LLC.,

(Cont'd on following page)

Crossing numerous times to obtain responses to this discovery, and was forced to file a motion to compel this discovery on June 26, 2012. (See Docket 43, at 3 and n.2.) On July 19, 2012, Secure Crossing produced a token amount of documents (approximately 70), none of which relate to the core technical documents needed to prove infringement. (Id.)

Also the subject of Rockwell's motion to compel discovery from Secure Crossing was the production of "core technical documents" that the Court ordered Secure Crossing to produce on June 1, 2012. (See May 11, 2012 Case Management Order ("CMO"), Exh. 1 at 8[2]; see also Motion to Compel, Docket 43 at 5.) On June 1, 2012, Secure Crossing produced a handful of documents but these were not "core" technical materials. (Schapira Decl., ¶ 3.) This production consisted of: an introductory summary of Secure Crossing and its product, a white paper, an advertisement for the Zenwall product, a quick start guide and Zenwall user manual, and materials provided to the Patent and Trademark Office as part of its request for reexamination of the '967 Patent. (Id.) Secure Crossing did not produce design and development specifications or source code detailing how the various features and functions of the accused products operate. (Id.)

Secure Crossing refuses to produce these documents until the Court rules on its Motion. (See Defendant's Opposition to Motion to Compel, Docket 51.) In doing so, Secure Crossing is

---

(Cont'd from preceding page)

Slip Copy, No. 10-cv-13147, 2011 WL 1135367, *3 (E.D. Mich., May 28, 2011); see also FED. R. CIV. P. 33(b)(4).; (see also Motion to Compel Discovery, Docket 43 at 5).

[2] Unless otherwise stated, all exhibits are to the Schapira Declaration.

3

in contempt of the Court's Order requiring it produce these documents by June 1, 2012. (May 11, CMO, Exh. 1 at 8; see also Rockwell's Motion to Compel, Docket 43 at 5.)

B.  **Discovery Was *Never* Stayed**

Discovery in this action has *never* been stayed and the statements in the Motion to that effect are false. Indeed at the product tutorial, Rockwell confirmed that understanding with Judge Steeh.

> **Counsel for Rockwell:** And so we are all clear my expectation is that discovery should continue to move forward. Your existing order should be honored, and we should continue with the status quo until we hear [sic] otherwise.
>
> **The Court**: Right.
>
> **Counsel for Secure Crossing**: That raises the issue. Is discovery going forward until the Court rules on the stay?
>
> **The Court**: Yes.

(June 21, 2012 Hearing Transcript, 41:11-19, Exh. 2.)

Indeed, Rockwell diligently pursued discovery. It took the court-ordered deposition of Secure Crossing's Chief Technology Officer ("CTO") on May 31, 2012. (See Deposition Transcript of Randall Reeves, Exh. 3.) In addition, Rockwell served written discovery on Secure more than two weeks before the May 11, 2012 case management conference. (Schapira Decl., ¶ 2.) The May 11, 2012 CMO did not stay discovery. (See Exh. 1.) Instead, the CMO set guidelines for the scope of discovery. (Id.) In addition to permitting each side to take 100 hours of deposition testimony, it specifically required Secure Crossing's CTO to appear for deposition during the last week in May 2012. (Id.) The CMO also expressly required Secure Crossing to produce its "core technical documents" on June 1, 2012. (Id.) Any statement that discovery that discovery was stayed is an attempt by Secure Crossing to distort the record.

C. **Secure Crossing Brought This Motion Without Meeting And Conferring As Required By Local Rule 7.1**

Secure Crossing filed this motion without following the requirements of Local Rule 7.1(a). On July 19, 2012, Secure Crossing sent the following email to Rockwell:

> Lisa: I need your concurrence in a Supplemental Protective Order creating a "Safe Harbor" for the Secure Crossing computer code; product designs, flow charts, etc., whereby it can only be inspected by outside experts.
> Arnie Weintraub

(July 19, 2012 Email from A. Weintraub to L. Schapira, Exh. 4.)

> Arnie: please provide a proposed supplemental protective order so that we can consider the language.

(July 19, 2012 Email from L. Schapira to A. Weintraub, Exh. 4.)

Secure Crossing never responded. (Schapira Decl., ¶ 7.) Instead, Secure Crossing filed the instant motion a few hours later on July 19, 2012. (Id.)

III. **ARGUMENT**

A. **Secure Crossing Allegations That Rockwell Intends To Steal Secure Crossing's Technology Are Distortions Of The Record And In Any Event Can Be Dealt With Through An Appropriate Protective Order**

1. **Secure Crossing's Paranoia is Unfounded**

Secure Crossing makes unfounded allegations that Rockwell intends to steal Secure Crossing's technology. (Motion at 2.) The Motion alleges that chief in-house counsel for Rockwell, John Miller "stated in no uncertain terms that it was his [Miller's] intent to 'steal' Secure Crossing's compute code and reverse engineer it, and then, amend Rockwell's pending patent application to cover Secure Crossing's invention." (Id.) Secure Crossing supports this statement with the declarations of Mr. Reeves and Ronald Deizel. (Id.)

The declaration from Mr. Reeves is not based upon personal knowledge, but instead states that he has "been made aware" of threats made by Mr. Miller. (Reeves Decl. ¶ 8, Motion

5

at Exh. A.)  The declaration of Mr. Deizel (attached to Docket 47) similarly does not support Secure Crossing's allegations that Rockwell intends to steal Secure Crossing's technology.  If anything, Mr. Deziel's declaration supports Rockwell's position that it believes that Secure Crossing's Zenwall products infringe Rockwell's patent.  Secure Crossing's attempt to transform a conversation between the parties regarding Rockwell's allegations of infringement into a conspiracy to violate this Court's May 31, 2012 Protective Order is outrageous and is a product of paranoia or a deliberate attempt to mislead the Court.  In either case, it should not be countenanced.

### 2. An Outside Attorneys Eyes Only Protective Order Is Sufficient To Safeguard Secure Crossing's Proprietary Information

Secure Crossing seeks to have technical documents relating to the accused products only inspected by an outside expert and placed in the custody of the Court. (Motion at 3.)  This position is unreasonable.  As an initial matter, it is routine in patent infringement cases that highly sensitive information is produced to outside counsel under a protective order.  Secure Crossing seeks to limit access to this information to outside experts only. (Motion at 3.) Rockwell's outside counsel cannot prosecute this case, update Rockwell's infringement contentions or file documents with the Court's if it must rely on the statements of an outside expert.  In additions, Secure Crossing's allegations that Rockwell will "hack" into Chadbourne & Parke LLP's servers are similarly without foundation. (Motion, Exh. C at ¶ 11.)

A Protective Order is already in effect for this action. (Docket 30, Exh. 5.)  When Secure Crossing agreed to the terms of this Protective order on May 30,2012, Secure Crossing was well aware that it would be required to produce technical documents regarding the Accused Products as it had been ordered to do so under the CMO and it had already been served with Rockwell's April 24, 2012 Discovery Requests.  Rockwell, however, is willing to amend the Protective

Order to create a third level of confidentiality designations – "Outside Attorneys' Eyes Only." This designation would carry the same terms and conditions as the "Attorneys Eyes Only" designation, except that Rockwell's designated in-house counsel would be excluded from the categories of persons who may review documents and things designated as "Outside Attorneys' Eyes Only"). A revised protective order is attached as Exhibit 6.

### IV. CONCLUSION

For the foregoing reasons Rockwell respectfully requests that the Court deny Secure Crossing's unreasonable request to limit view of its technical information to outside experts only, viewable only at the Courthouse. Should the Court want to afford additional protection to Secure Crossing's documents, it should require the parties to enter into an appropriate protective order with an "outside attorneys eyes only" designation" which is attached to the Schapira Declaration as Exhibit 6. The Court should also take into account the waste of judicial resources devoted to this motion due to Secure Crossing's failure to meet and confer on this issue as required by Local Rule 7.1(a).

\\

\\

\\

\\

\\

\\

Dated: August 6, 2012

Respectfully submitted,

/s/ Scott S. Balber

HONIGMAN MILLER SCHWARTZ AND COHN LLP
J. Michael Huget (P39150)
Deborah J. Swedlow (P67844)
130 S. First Street – 4th Floor
Ann Arbor, MI 48104-1386
Tel: (734) 418.4268
Fax: (734) 418.4269
Email: mhuget@honigman.com
   bswedlow@honigman.com

CHADBOURNE & PARKE LLP
Scott S. Balber
Paul J. Tanck
Lisa Schapira
30 Rockefeller Plaza
New York, NY 10112
Tel.: (212) 408-5100
Fax: (212) 541-5369
Email: sbalber@chadbourne.com
   ptanck@chadbourne.com
   lschapira@chadbourne.com

**ATTORNEYS FOR PLAINTIFF ROCKWELL AUTOMATION TECHNOLOGIES, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of August, 2012 a copy of the foregoing was electronically filed with the Clerk of the Court using the ECF system which will send notification of such filing to the attorneys of record.

Dated: August 6, 2012	/s/     Lisa Schapira

Lisa Schapira
CHADBOURNE & PARKE LLP
30 Rockefeller Plaza
New York, NY  10112
Tel.:  (212) 408-5100
Fax:  (212) 541-5369
Email:  lschapira@chadbourne.com

**ATTORNEY FOR PLAINTIFF
ROCKWELL AUTOMATION TECHNOLOGIES, INC.**